Nisa SHARIEFF, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 92–CV–5733 (FB).

United States District Court,
E.D. New York.

Feb. 17, 1995.

Stephen Heffner, Bay Shore, NY, for plaintiff.

Zachary W. Carter, U.S. Atty. by Annette H. Blum, of counsel, Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

BLOCK, District Judge:

Plaintiff Nisa Sharieff ("Sharieff") has brought this action pursuant to 42 U.S.C. § 405(g) to review a final determination of the Secretary of Health and Human Services (the "Secretary") denying Sharieff's application for disability insurance benefits under Title II of the Social Security Act (the "Act"). The Secretary has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court reverses the Secretary's decision denying Sharieff benefits because the administrative law judge ("ALJ") adjudicating the matter applied an erroneous legal standard regarding the weight to be accorded the opinions of Sharieff's treating physicians, and accordingly remands the action for further proceedings consistent with this memorandum and order.

## I.

### FACTS AND PROCEDURAL HISTORY

On May 12, 1990, Sharieff stopped work as a Licensed Practical Nurse ("LPN") due to injuries allegedly resulting from a car accident occurring on that day. (Tr. 25.)[1] The next day, Sharieff filed an application for disability insurance benefits alleging that she was unable to perform her job due to pain in her neck, back, hip, arm, shoulder and leg. Sharieff sought treatment from her physician, Dr. Alfred Malinov, who thereafter saw her on a monthly basis and eventually concluded that she was "disabled." On June 19, 1991, Dr. Seo, a "consulting physician" whom the government hired to examine Sharieff pursuant to 20 C.F.R. § 404.1517, also examined Sharieff. Dr. Seo opined that Sharieff "[p]robably ... does not have any problem except her complaint" of pain in various parts of her body. (Tr. 86.)

On July 11, 1991, despite Sharieff's alleged claims, the Department of Health and Human Services ("HHS") denied Sharieff the benefits she requested, stating that her "condition was not severe enough to keep [her] from working." (Tr. 53.) On September 6, 1991, Sharieff filed an application for "reconsideration" of the denial of benefits pursuant to 20 C.F.R. § 404.909, which was denied on October 28, 1991. (Tr. 53–54, 56–58.)

On July 26, 1991, approximately one and one-half months prior to filing her reconsideration petition, Sharieff suffered another car accident allegedly aggravating her pre-existing injuries. Sharieff thereafter began treatment with Dr. Martin Lehman, an orthopedic surgeon, and Dr. Mark Gudesblatt, a neurologist, both of whom subsequently opined that Sharieff was "disabled" not only as of the second car accident but also as of the first car accident.

---

1. Page references are to the transcript of the administrative record filed by the Secretary as part of her answer.

On April 10, 1992, upon Sharieff's request for an appeal pursuant to 20 C.F.R. § 404.914, an ALJ held a hearing at which Sharieff testified while represented by counsel. The ALJ considered Sharieff's testimony and the examination reports of Drs. Malinov, Lehman and Gudesblatt, all of which concluded that Sharieff was unable to sit for more than six hours in an eight hour workday, thereby rendering her "disabled" as a result of the *first* (May 12, 1990) accident. (Tr. 83, 93–94, 99–100, 109–110.) On April 17, the ALJ issued his decision, holding that Sharieff was entitled to benefits only from the date of the second accident (July 26, 1991), but not benefits from the date of the first accident. (Tr. 16.)

On October 15, 1992, Sharieff filed pursuant to 20 C.F.R. § 404.967 an application to the Appeals Council, which reviews ALJs decisions. On November 4, 1992, the Appeals Council denied hearing the case, concluding that there existed no basis for granting the request for review, thereby rendering the ALJ's determination the final decision of the Secretary. (Tr. 3.) This appeal followed.

## II.

### DISCUSSION

■ In reviewing the ALJ's determination, the Court must determine "whether the Secretary's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990) (citing 42 U.S.C. § 405(g)); *see also Frerks v. Shalala*, 848 F.Supp. 340, 348 (E.D.N.Y.1994). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). To evaluate disability claims, the Secretary uses the following five-step analysis:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Murphy v. Secretary of Health and Human Servs.*, 872 F.Supp. 1153, 1156 (E.D.N.Y. 1994) (*quoting Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982)).

■ The burden of proof rests on the claimant as to the first four steps and the Secretary bears the burden of proof on the fifth step. *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991); *Murphy*, 872 F.Supp. at 1156. The Secretary will make a finding of "disabled" only if a claimant is able to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505; *White v. Secretary of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir.1990).

Here, the ALJ determined that there existed substantial evidence in the record to indicate that Sharieff had not engaged in substantial gainful activity; that Sharieff had a severe physical impairment significantly limiting her ability to do basic work activi-

ties, but that her injuries did not meet the criteria of the "listings"; and that Sharieff did not have the residual functional capacity to perform her past relevant work. (Tr. 15.) Thus, he concluded, and the parties do not dispute, that Sharieff met the first four steps.

The only issue in dispute concerns the ALJ's finding that Sharieff was not "disabled" after the first accident because, although she was not capable of performing her past work, she retained the "residual functional capacity" to perform *other* "sedentary" work. (Tr. 16.)[2] Sharieff argues that the ALJ's decision was not based on substantial evidence because the ALJ failed to give the proper weight under the "treating physician rule" to the opinions of her three treating physicians, all of whom, as noted above, concluded that Sharieff was rendered "disabled" from the day of her first car accident.

Prior to 1991, the "treating physician" rule of the Second Circuit held that the opinions of treating physicians were " 'binding on the fact-finder unless contradicted by substantial evidence.' " *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (*quoting Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988)). In 1991, the Secretary promulgated new regulations which limited the weight accorded such opinions. 20 C.F.R. § 404.1527(d)(2). These regulations—unlike the prior rule which presumed as binding the opinions of treating physicians unless contradicted by substantial evidence—give treating physicians' opinions "controlling weight" *only* if they are "well supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." *Id.* Where the treating physician's opinions are not to be given "binding" or "controlling" weight, the ALJ under the old scheme would merely give " 'some extra weight' " to the opinions, *Jones,* 949 F.2d at 59 (*quoting Schisler v. Bowen,* 851 F.2d at 47), whereas under the new scheme the ALJ would need to consider the following factors in order to determine the proper weight to accord such opinions:

(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion, *i.e.,* "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that the opinion is given; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; if it is, it will be accorded greater weight; and (v) other relevant but unspecified factors.

*Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993) (citing 20 C.F.R. § 404.1527(d)(2)). The Secretary's regulations further provide that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

While "[d]istrict courts in the Second Circuit recognized that the new regulations were binding upon adjudications within [HHS]," they "continued to apply the Second Circuit's [earlier] treating physician rule, giving greater deference to treating physicians' opinions." *Nutkins v. Shalala,* 1994 WL 714252, at *3 (N.D.N.Y.1994). In 1993, the Second Circuit resolved the dispute by binding district courts within the circuit to abide by the treating physician rule contained in the 1991 regulations. *Schisler v. Sullivan,* 3 F.3d at 568.

Here, despite the binding effect of the 1991 regulations on the ALJ at the time he adjudicated Sharieff's claim, he applied the old, pre–1991 standard in considering the weight to accord Sharieff's treating physicians. Nowhere did the ALJ cite to, quote from or otherwise consider the 1991 regulations in determining the weight to accord Sharieff's treating physicians and, in fact, he cited to pre–1991 Second Circuit caselaw in drawing his conclusions. (Tr. 10, 13) (applying treating physician rule outlined in *Schisler v. Bowen,* 851 F.2d 43 (2d Cir.1988)). Thus, while the Court acknowledges that in the first instance the ALJ erred in *favor* of Sharieff because the old rule he applied was more lenient to claimants than the 1991 regula-

---

**2.** Sedentary work is defined as "work [which] involves lifting no more than 10 pounds at a time and ... a certain amount of walking and stand-

ing...." 20 C.F.R. § 404.1567(a); *see Rosario v. Sullivan,* 875 F.Supp. 142 at 148 (E.D.N.Y. 1995).

tions, he erred *against* Sharieff in the second instance by failing to consider the factors outlined above after he concluded that "binding" or "controlling" weight should not apply to Sharieff's treating physicians' opinions. As recently stated in *Ortiz v. Shalala*, 1994 WL 673630, at *2 (S.D.N.Y.1994):

> In its denial of plaintiff's Request for Review, the Appeals Council indicated only that it had decided not to give controlling effect to Doctor Orque's report because this report was "not supported by the other medical evidence of record." Tr. 3. Even if this finding by the Appeals Council were correct, which we do not decide, *the Council was next required under the regulations to explain exactly how much weight it did give Doctor Orque's opinion in light of the factors set forth in [the 1991 regulations].* Since the Council failed to mention or apply these factors, we find that Dr. Orque's medical opinion may have been improperly rejected.

(Emphasis added.) *See also Sloan v. Shalala*, 28 F.3d 113 (10th Cir.1994) (ALJ improperly disregarded treating physician's opinion without applying the regulatory factors); *Shaw v. Secretary of Health and Human Servs.*, 25 F.3d 1037 (1st Cir.1994) (district court overlooked the new regulation). As a result, not only did the ALJ apply "an erroneous legal standard," *Cruz*, 912 F.3d at 11; *Frerks*, 848 F.Supp. at 348, and fail to "give good reasons in [his] notice of ... decision," 20 C.F.R. § 404.1527(d)(2), he also failed to provide sufficient information by which the Court could determine whether he accorded the opinions of Sharieff's treating physicians the weight to which they are properly entitled.

### III.

#### CONCLUSION

The Court thus finds that the ALJ based his decision on an erroneous legal standard and, therefore, reverses the Secretary's decision and remands the case for further proceedings consistent with this opinion.

**SO ORDERED.**